IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 NOV 16  A 11: 22

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| THE PAUL REVERE LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| ZEV-DAVID NASH, M.D., | ) ) |
| Defendant. | ) |

CASE NO. 2:06CV1029-MEF

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff The Paul Revere Life Insurance Company ("Paul Revere"), pursuant to Federal Rule of Civil Procedure 57, files this Complaint for Declaratory Relief against Defendant Zev-David Nash, M.D. ("Dr. Nash") and alleges as follows:

### JURISDICTION AND VENUE

1. This suit seeks a declaration from this Court that Dr. Nash is not eligible for the insurance benefits for which he applied, and that Paul Revere does not owe Dr. Nash any benefits under the terms of the applicable insurance policy.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 2201 and 2202.

3. Plaintiff Paul Revere is an insurance company incorporated in Massachusetts, with its principal place of business in Massachusetts and qualified to do business in the State of Alabama.

4. Dr. Nash claims to reside in Montgomery County, Alabama. As a result, the venue of this case is proper in this district pursuant to 28 U.S.C. § 1391.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Paul Revere and Dr. Nash are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## BACKGROUND FACTS

6. Paul Revere issued an individual disability policy to Dr. Nash with an effective date of January 19, 1993, bearing policy number 0102598779. A copy of that policy is attached as **Exhibit A**. The policy was issued and delivered when Dr. Nash resided in Louisiana.

7. The policy provides disability benefits to the insured if the insured satisfies all of the provisions of the policies required for coverage. The policy contains the following relevant definitions:

> 1.10. **"Total Disability"** means that because of Injury or Sickness:
>
> a. You are unable to perform the important duties of Your Occupation; and
> b. You are receiving Physician's Care.
>
> \* \* \*

    1.5    **"Injury"** means accidental bodily injury sustained after the Date of Issue and while Your Policy is in force.

    1.6    **"Sickness"** means sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force. It includes Disability due to complications of pregnancy or childbirth. It includes Disability due to normal pregnancy or childbirth after You have been Disabled for 90 days.

\* \* \*

    1.8    **"Physician's Care"** means the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability.

    1.9    **"Your Occupation"** means the occupation or occupations in which You are regularly engaged at the time Disability begins.

Exhibit A at p. 6.

8. In January 2006, Dr. Nash filed a disability claim with Paul Revere, claiming that he had been unable to work in his occupation as an Internal Medicine physician since December 13, 2005, due to sickness, specifically major depression.

9. Paul Revere's investigation of the claim revealed that on October 19, 2005, Dr. Nash was confronted by investigators from the Alabama Board of Medical Examiners and accused of providing fake flu vaccinations to individuals by substituting saline solution for the vaccinations. Upon being confronted, Dr. Nash admitted that he had substituted saline solution for the flu vaccines.

10. The Board of Medical Examiners also alleged that approximately one year earlier, on or about October 20, 2004, Dr. Nash injected over 90 Colonial Bank employees with a substance alleged to be a flu vaccine, but which was, in reality, saline solution.

11. On October 19, 2005, when investigators from the Board of Medical Examiners confronted Dr. Nash with the allegation that he was misrepresenting that injections of saline solution were flu vaccines, and he admitted to doing so, Dr. Nash voluntarily agreed not to practice medicine pending the Board's decision regarding the incident.

12. On November 17, 2005, the Board of Medical Examiners suspended Dr. Nash's license to practice medicine for immoral, unprofessional, and dishonorable conduct, and practicing medicine in a manner to endanger the health of the patients. The Board of Medical Examiners further ordered that Dr. Nash immediately cease and desist the practice of medicine in the State of Alabama, surrender his license to practice medicine in Alabama, and inventory the controlled substances in his possession. The Medical Licensure Commission set a hearing for January 25, 2006.

13. On December 9, 2005, Dr. Nash voluntarily surrendered his license to practice medicine in the State of Alabama, specifically acknowledging that this action was taken after the filing by the Alabama State Board of Medical Examiners of the administrative complaint asserting the violations listed above. Dr. Nash's illegal

conduct, the suspension of his license, and his subsequent surrender of his license to practice medicine occurred prior to the December 13, 2005, date that his attending physician listed as the date that the alleged restriction and limitations on his ability to practice medicine as a result of his major depression condition began. Moreover, Dr. Nash was not practicing medicine prior to December 13, 2005, because his license was first suspended and subsequently surrendered before that time.

14. Paul Revere had Dr. Nash's medical records reviewed by a board certified psychiatrist, who concluded that there was no evidence of restrictions or limitation based on sickness or injury prior to Dr. Nash being confronted for the above-described illegal activities, his agreement to stop practicing medicine on October 19, 2005, and the subsequent suspension of his license in November 2005. Moreover, there is no evidence that Dr. Nash was receiving "Physician's Care" before December 13, 2005.

15. At the time Dr. Nash voluntarily agreed to stop practicing medicine because of the charges against him, and the subsequent suspension of his license, Dr. Nash was not "unable to perform the duties of [his] Occupation" due to any "Sickness" or "Injury," as the policy required. Instead, he was not able to perform the duties of his occupation because he was legally prohibited from doing so due to the suspension of his medical license. Dr. Nash's legal inability to do his job does not constitute a "disability" under the policy, and Dr. Nash is not eligible for disability benefits under these circumstances.

16. The policy requires that Dr. Nash satisfy a 90-day elimination period in which he must be continuously disabled before receiving benefits. The elimination period expired on March 13, 2006.

17. If the Court determines that Dr. Nash has been eligible for benefits since December 2005, and that Dr. Nash remains eligible for benefits to date, both of which Paul Revere disputes, the monthly benefit amount is $11,130.00, bringing the total benefits in dispute to over $89,000.00.

## CLAIM FOR DECLARATORY RELIEF

18. Paul Revere adopts and incorporates as if fully stated herein the allegations in Paragraphs 1-17 above.

19. Dr. Nash's legal inability to work in his occupation does not constitute a "disability" under the policy, and Dr. Nash is not eligible for disability benefits under these circumstances.

20. As a result, Paul Revere seeks a declaration from this Court that Dr. Nash is indeed not eligible for benefits, and that Paul Revere does not owe Dr. Nash any benefits under the terms of the policy.

WHEREFORE, Plaintiff Paul Revere prays to this Court for the following relief:

    a. That this Court accept jurisdiction over this matter;

    b. That this Court find that Dr. Nash is not entitled to any benefits under the policy that is the subject of his claim and this action;

c.  That this Court declare that Paul Revere is not obligated to pay Dr. Nash benefits under the individual disability policy based on his current claim; and

d.  That this Court render judgment for such other and further relief as this Court may deem appropriate.

                                  Respectfully submitted,

                                  _____
                                  JOHN S. JOHNSON

**OF COUNSEL:**
HAND ARENDALL, L.L.C.
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Telephone: (205) 324-4400
Facsimile: (205) 397-1307

                                  HENRY T. MORRISSETTE

**OF COUNSEL:**
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
Telephone: (251) 432-5511
Facsimile: (251) 694-6375

                                  ATTORNEYS FOR PLAINTIFF THE PAUL REVERE LIFE INSURANCE COMPANY

Defendant to be served at the following address by Certified Mail, Return Receipt Requested and Restricted Delivery:

Zev-David Nash, M.D.
Post Office Box 13861
Birmingham, Alabama 35202